UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

FILED

99 NOV 30 PM 12: 25

U.S. DISTRICT COURT
N.B. OF ALABAMA

CHARLIE SLEDGE,                          ]
                                         ]
       Plaintiff(s),                     ]
                                         ]
vs.                                      ]     CV 98-N-1626-NE
                                         ]
DUNLOP TIRE COMPANY,                     ]
                                         ]
       Defendant(s).                     ]

ENTERED

NOV 3 0 1999

**Memorandum of Opinion**

### I. Introduction.

In this suit, Charlie Sledge, the plaintiff, brings suit against Dunlop Tire Company,

pursuant to Title VII, 42 U.S.C. § 2000e, et seq., and 42 U.S.C. § 1981, alleging disparate

treatment in failing to transfer him to a maintenance mechanic position.[1] The plaintiff claims

that he was not transferred to the position because of his race, while the defendant argues

that it did not transfer the plaintiff to the maintenance mechanic position because he was

not qualified for the position.  The plaintiff contends that he was subject to disparate

treatment because similarly situated white employees were transferred to the position

despite the fact that they were equally or less qualified than the plaintiff.

This matter is presently before the court on Dunlop's motion for summary judgment,

filed July 2, 1999 (Doc. No. 18).  The issues have been briefed by the parties.  Upon due

consideration, the motion will be granted.

---

[1] On May 7, 1999, the parties filed a stipulation of dismissal of the plaintiff's disparate impact claim.
Accordingly, only the plaintiff's disparate treatment claim remains in this motion for summary judgment.

## II. Statement of the Facts.

The plaintiff is an African-American male employed as a tire builder in the production unit at Dunlop's Huntsville plant. It is undisputed that transfer from the production unit to the maintenance unit is governed by the collective bargaining agreement between the defendant and the union, which requires certain qualifications to work in that unit. Ed Grooms, the plant engineer, implemented four requirements that applicants to the maintenance department must meet, including five years of industrial maintenance experience, passing a written test, interview, and a 60-day evaluation in the job.

It is undisputed that Dunlop requires five years experience because it does not have a sufficient staff to train new mechanics and because it pays among the highest wages for such positions in the Huntsville area. It is also undisputed that since the defendant began requiring a written test, all applicants who have received maintenance mechanic positions have had at least five years industrial maintenance experience. The written tests, which were developed by senior project engineer, David Jacks, were implemented to give consistency to the evaluation process and to insure a minimum level of knowledge. Mr. Jacks developed two tests, each requiring a passing score of 75 percent.

Because the plaintiff was not in the maintenance unit, he was required to pass the written test and show that he had five years of industrial maintenance experience before being interviewed. It is undisputed that as a result of negotiations with the union, the plaintiff was allowed to take the test along with Charlie Slayton, a white employee, who had a pending grievance concerning a position in the maintenance unit. The plaintiff took the test on August 7, 1996, and scored 66 percent. It is undisputed that the plaintiff, along with

2

Mr. Slayton, were allowed to take another version of the test on October 29, 1996, and the plaintiff failed the test with a score of 65 percent.[2] The defendant argues that it refused to transfer the plaintiff to a maintenance mechanic position on the basis that he was not qualified for the position because he did not pass either of the two versions of the written test administered to him and because he could not demonstrate that he possessed the required five years of industrial maintenance experience. The plaintiff, on the other hand, argues that if the scoring mistakes made in the grading of his exam were corrected, his test would reflect a passing grade. Further, the plaintiff argues that it was not until this lawsuit that the defendant took the position that the plaintiff was unqualified to take the test in the first place because he failed to satisfy the requirement of having five years of industrial maintenance experience.

**III. Summary Judgment Standard.**

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."

---

[2] Mr. Slayton scored 68 percent on the second test but was awarded the position by an arbitrator based on a grievance that was filed by Mr. Slayton before the testing requirement was implemented. Apparently, Mr. Slayton scored 72 percent on the first test.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  The

movant can meet this burden by presenting evidence showing there is no dispute of

material fact, or by showing that the nonmoving party has failed to present evidence in

support of some element of its case on which it bears the ultimate burden of proof.

*Celotex*, 477 U.S. at 322-23.  There is no requirement, however, "that the moving party

support its motion with affidavits or other similar materials *negating* the opponent's claim."

*Id.* at 323.

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party

to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to

interrogatories, and admissions on file,' designate 'specific facts showing that there is a

genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).  The

nonmoving party need not present evidence in a form necessary for admission at trial;

however, he may not merely rest on his pleadings. *Id.* at 324. "[T]he plain language of Rule

56(c) mandates the entry of summary judgment, after adequate time for discovery and upon

motion, against a party who fails to make a showing sufficient to establish the existence of

an element essential to that party's case, and on which that party will bear the burden of

proof at trial." *Id.* at 322.

After the nonmovant has properly responded to a motion for summary judgment, the

court must grant the motion if there is no genuine issue of material fact and the moving party

is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).  The substantive law will

identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury

4

could return a verdict for the nonmoving party." *Id.* at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. His guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52; *see also Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 745 n.11(1983) (indicating the standard for summary judgment is "[s]ubstantively . . . very close" to that for motions for directed verdict). However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If the evidence is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted); *accord Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989).

Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are functions of the jury, and, therefore, "[t]he evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. The nonmovant need not be given the benefit of every inference but only of every reasonable inference. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

**IV. The McDonnell Douglas Framework.**

This case involves the application of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981 to the plaintiff's claim of racial discrimination. The elements and proof for a cause of action under § 1981 are identical to the elements of a Title VII claim. *Walters v. City of Atlanta*, 803 F.2d 1135 (11th Cir. 1986). Plaintiff seeks to establish his claims based on circumstantial evidence, so the familiar framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) governs this court's inquiry.

Under the *McDonnell Douglas* framework, a plaintiff seeking to establish a claim based on circumstantial evidence has the burden of establishing a *prima facie* case of discrimination. "Establishment of the prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee." *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981). The burden of production then shifts to the defendant, requiring the defendant to articulate some "legitimate, nondiscriminatory reason" for the allegedly discriminatory employment action. *Id.* "[I]t is possible for the defendant to present such strong evidence of a nondiscriminatory rationale that summary judgment is warranted." *Brown v. American Honda Motor Co., Inc.*, 939 F.2d 946, 950 (11th Cir. 1991), *cert. denied*, 502 U.S. 1058 (1992) (quoting *Grigsby v. Reynolds Metal Co.*, 821 F.2d 590, 596 (11th Cir. 1987)).

Once the defendant presents a legitimate, nondiscriminatory reason for its action, the presumption of discrimination "drops from the case." *Burdine*, 450 U.S. at 255 & n.10. The plaintiff must then prove by a preponderance of the evidence that the reason offered by the defendant was not the true reason for the employment decision, but rather is a mere

6

pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 804. "[B]ecause the plaintiff bears the burden of establishing pretext [for discrimination], he must present 'significantly probative' evidence on the issue to avoid summary judgment." *Isenbergh v. Knight-Ridder Newspaper Sales, Inc.*, 97 F.3d 436, 444 (11th Cir. 1996) (quoting *Young v. General Foods Corp.*, 840 F.2d 825, 829 (11th Cir. 1988), *cert. denied*, 488 U.S. 1004 (1989)) (other citations omitted) (alterations in original).

The plaintiff may prove that the defendant intentionally discriminated against him "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Carter v. City of Miami*, 870 F.2d 578, 584 (11th Cir. 1989) (quoting *Goldstein v. Manhattan Indus., Inc.*, 758 F.2d 1435, 1445 (11th Cir.), *cert. denied*, 474 U.S. 1005 (1985)). However, "'to withstand a defendant's motion for summary judgment, a plaintiff has to do more than establish a prima facie case and deny the credibility of defendant's witnesses.'" *Howard v. BP Oil Co., Inc.*, 32 F.3d 520 (11th Cir. 1994) (quoting *Brown*, 939 F.2d at 950). "Conclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext or intentional discrimination where [a defendant] has offered extensive evidence of legitimate, nondiscriminatory reasons for its actions." *Isenbergh*, 97 F.3d at 444 (quoting *Young*, 840 F.2d at 830). Plaintiff must instead "produc[e] sufficient evidence to allow a reasonable finder of fact to conclude that the defendant's articulated reasons for its decision are not believable."[3] *Howard*, 32 F.3d at 526.

---

[3] In other words, a defendant can carry its initial burden on summary judgment on the pretext issue by presenting extensive proof to support its legitimate nondiscriminatory reason. If the defendant can show that its proffered reason was the real reason, it need not prove a negative by showing that the plaintiff cannot prove

If a plaintiff succeeds in this burden, the "disbelief of the defendant's proffered reasons, together with the *prima facie* case, is sufficient circumstantial evidence to support a finding of discrimination" and to preclude summary judgment. *Combs v. Plantation Patterns*, 106 F.3d 1519, 1529 (11th Cir. 1997). Because of the difficult factual questions involved in assessing "an employer's true motivations," once the plaintiff has presented evidence raising a question about those motivations summary judgment is ordinarily inappropriate. *Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 919 (11th Cir. 1993). If evidence in the record "demonstrate[s] 'such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its action that a legitimate factfinder could find them unworthy of credence,'" the final assessment of the employer's motivation must be left to the jury. *Combs*, 106 F.3d at 1538.

## V. Discussion.

In this case, Mr. Sledge asserts that Dunlop discriminated against him by refusing to transfer him to a maintenance mechanic position, while not doing the same to white employees in similar situations. To prevail on his claim of disparate treatment due to race, the plaintiff must establish a *prima facie* case by showing that: 1) he belongs to a racial minority; 2) he was qualified to do the job; 3) he was subjected to an adverse employment action; and 4) his employer treated non-minority similarly situated employees more favorably. *Holifield v. Reno*, 115 F.3d 1555, 1561 (11th Cir. 1997). The defendant asserts that the plaintiff cannot establish the second or fourth prong of the *prima facie* case.

---

pretext. Pretext and a legitimate reason are, after all, two sides of the same coin. Proof of one disproves the other.

It is undisputed that Mr. Sledge is a member of a racial minority. However, the defendant argues that the plaintiff is not qualified to be a maintenance mechanic. The defendant asserts that the plaintiff did not pass either of the maintenance mechanic tests that he took and thus is not qualified. On August 7, 1996, the plaintiff took the first test and scored 66 percent but needed a 75 percent of the total number of points to pass the test. On October 29, 1996, the plaintiff took a different version of the maintenance mechanic test and scored 65 percent, again needing 75 percent of the total number of points available to pass the test. In response, the plaintiff contends that "[i]f the scoring mistakes, to which Jacks admitted on direct testimony are corrected, Sledge actually passed the test. (Ex. 1 Jacks Depo. Pg. 48, 49, 50, 51 and 62)." Opponent's responsive submission (Doc. No. 21) at 14.

As to the first word problem on the test, Mr. Jacks initially testified that he would probably give Mr. Sledge a four or five on that question. Movant's evidence, volume II (Doc. No. 20) exhibit D at 48, 51. However, upon further questioning and after Mr. Jacks was given the opportunity to look at Mr. Sledge's test more thoroughly, Mr. Jacks explained his reasoning in grading the answer and testified that the plaintiff was not entitled to four or five points on the first word problem and that he had been correctly awarded two points for his answer. *Id.* at 120-122. As to the second word problem on the test, Mr. Jacks initially testified that he could have given Mr. Sledge six points on that question. *Id.* at 49-51. However, after reviewing Mr. Sledge's test more thoroughly, Mr. Jacks explained his grading process and testified that "I believe the initial score of two was correct." *Id.* at 123. Upon re-examination, the plaintiff did not elicit any testimony from Mr. Jacks to contradict

9

his testimony that he had graded Mr. Sledge correctly on these questions. *Id.* at 124-126. Thus, it appears that the plaintiff is not entitled to any additional points for word problems one and two.

Mr. Jacks did testify, however, that as to Mr. Sledge's exam, he marked one of Mr. Sledge's answers wrong, which was in fact a correct answer. Thus, one point should have been added to Mr. Sledge's score. *Id.* at 62.[4] As to the third word problem on the test, Mr. Jacks testified that today he would probably award five points for the plaintiff's answer instead of the four points he was awarded when he graded the test. *Id.* at 50. The defendant does not contest the addition of these two points and furthermore concedes that the plaintiff is entitled to another point "for correctly identifying a U-bolt on page 4 of the test." Movant's reply (Doc. No. 23) at 1. However, the defendant points out that the plaintiff is left with "only 3 raw points that could be added to Plaintiff's total of 111 raw points. The percentage score of 114 raw points out of a total of 169 possible points yields a grade of 67.45%, which remains far short of the required 75 percent passing level." *Id.* at 2 (citation omitted). The court agrees.

As the plaintiff is unable to establish that he passed either of the maintenance mechanic tests, he cannot establish the second prong of his *prima facie* case, i.e., that he

---

[4] The plaintiff asserts in his statement of undisputed facts that "[a] comparison of the grading of Sledge's test to the scoring of Randy Atkins' test, a white applicant, demonstrates disparate treatment" because Mr. Atkins was properly given credit for identifying the correct answer while Mr. Sledge was not. Opponent's responsive submission (Doc. No. 21) at 6, ¶ 13. However, Mr. Jacks testified that he did not know Mr. Atkins' race and in fact did not even remember Mr. Atkins at all. Movant's evidence, volume II (Doc. No. 20) exhibit D at 60-61.

is qualified to be a maintenance mechanic.[5]  Accordingly, summary judgment will be granted for the defendant.  The court will enter an appropriate order in conformity with this opinion.

Done, this __20th__ of November, 1999.


_____
EDWIN L. NELSON
UNITED STATES DISTRICT JUDGE


---

[5]As the plaintiff cannot establish the second prong of his *prima facie* case because he did not pass the test necessary to qualify him for the job at issue, there is no need to address the other arguments raised by the defendant in its motion for summary judgment.

11